IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **LYNNE CALLIGARO**<br>1014 Croton Dr.<br>Alexandria, Virginia 22308<br><br>    *Plaintiff,*<br><br>v.<br><br>**DELOITTE CONSULTING LLP**<br>1919 N. Lynn St.<br>Arlington, Virginia 22209<br><br>    *Defendant.* | Case No.:<br><br>**JURY DEMAND** |

## COMPLAINT

COMES NOW PLAINTIFF Lynne Calligaro, by and through the undersigned counsel, and for her Complaint against Deloitte Consulting LLP ("Deloitte" or "Defendant"), alleges as follows:

1. Plaintiff brings this action against Defendant for damages arising out of violations of the Equal Pay Act of 1963 ("EPA"), codified at 29 U.S.C. § 206(d)(1), *et seq.,* because Defendant failed to pay Plaintiff the amounts paid to men who performed substantially equal work on jobs, under similar working conditions, that required substantially equal skill, effort, and responsibility. Additionally, when Plaintiff complained about the unlawful employment actions, Defendant retaliated against Plaintiff.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331, as the claims involve questions of federal law.

3. This Court has personal jurisdiction over Defendant because Defendant operates an office out of Arlington, Virginia.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because the acts and omissions complained of herein occurred within this judicial district. Defendant also resides within this judicial district.

## PARTIES

5. Plaintiff is a resident of Alexandria, Virginia, and worked in various positions at Defendant.

6. Plaintiff, during her employment tenure with Defendant, was assigned to and worked primarily out of Defendant's office in Arlington, Virginia.

7. Plaintiff was employed by Defendant from May 2009 until September 2019.

8. Defendant is a multinational professional services firm that provides audit, tax, advisory, and consulting services.

9. Defendant operates offices in many different locations around the world, including but not limited to an office in Arlington, Virginia.

10. At all times relevant to the claims contained herein, Defendant was an "employer" within the meaning of the EPA.

11. At all times relevant to the claims contained herein, Plaintiff was an "employee" within the meaning of the EPA.

## STATEMENT OF FACTS

**Background**

12. On or about May 9, 2009, Plaintiff began employment with Defendant as a Manager and received a base salary of $101,500, with the potential to earn bonuses.

13. Prior to being hired by Defendant, Plaintiff had significant experience at other consulting firms.

14. At the time that she was hired, Plaintiff held two (2) Master's degrees relevant to the consulting field.

15. In 2012, Defendant promoted Plaintiff to Specialist Leader.

16. By 2014, Plaintiff's base salary had increased to $143,543, with the potential to earn bonuses.

17. In the years 2011, 2012, 2013, and 2014, Plaintiff received annual performance ratings of "1" which is the highest possible rating on Defendant's evaluation scale. In 2015, Plaintiff received a performance rating of "2."

18. In 2014, Plaintiff requested that, Tony DeMarinis, a Managing Director at Defendant, investigate whether Plaintiff was being paid a comparable salary to that of her male peers.

19. Mr. DeMarinis and Courtney Henry, a Talent Business Advisor at Defendant, investigated and determined that Plaintiff was not being compensated with a base salary comparable to Plaintiff's male colleagues.

20. Male employees, who were Plaintiff's peers, and received a rating of "1," were receiving at least $200,000 or more.

21. Mr. DeMarinis and Managing Director Tracy Haugen negotiated an off-cycle salary increase for Plaintiff.

22. In December 2014, the off-cycle salary increase was approved by Sean Morris, a Partner at Defendant.

23. Mr. Morris acknowledged to Plaintiff that Defendant considered Plaintiff to be a top performer, and that her base pay should be increased considerably.

24. Mr. Morris informed Plaintiff that Defendant could not, "all at once", achieve a full increase in Plaintiff's base salary.

25. Mr. Morris agreed to increase Plaintiff's base pay by $20,000, and promised that, in 2015, Defendant would again adjust Plaintiff's salary to a more appropriate level.

26. In December 2014, Plaintiff received a $20,000 increase to her base salary.

27. Defendant, despite previous promise, did not make an additional salary adjustment to Plaintiff's base salary in 2015.

**Plaintiff's Salary History**

28. Plaintiff was considered a top performer with Defendant during the years 2011-2015.

29. In 2014, Plaintiff received a "1" rating for performance; this was Plaintiff's fourth "1" rating.

30. Despite Plaintiff's high performance, her salary remained among the lowest in the salary band for her performance peer group in 2014.

31. Plaintiff's compensation was not consistent with Defendant's characterizations of Plaintiff as a "top performer" and "highly valued."

32. Plaintiff's compensation was not consistent with Defendant's own guidelines, criteria, and methods for assessing and setting compensation.

33. Plaintiff was never provided any explanation for the decisions related to determining her salary.

34. At the time of her termination, in September 2019, Plaintiff's base salary was $171,400.

**Defendant Paid Plaintiff Less than her Male Colleagues**

35. Plaintiff's primary job responsibilities included, but were not limited to, writing proposals, selling new engagements to clients, managing projects, advising clients, leading teams to

execute work, monitoring budgets, mentoring junior staff, and building eminence in her specialized field within consulting.

36. Plaintiff had comparable education, experience, and training to male employees in her peer group at Defendant.

37. Plaintiff performed substantially similar work to that of the work performed by male employees in her peer group at Defendant.

38. In 2014, Jeff Birch, a male Specialist Leader at Defendant, was assigned to the same geographic location as Plaintiff – the Arlington, Virginia office.

39. While in the Arlington office, Mr. Birch and Plaintiff were part of Defendant's Talent, Performance, & Rewards service line, in the Human Capital service area, within Defendant's Federal Consulting Practice.

40. In 2014, Mr. Birch worked on similar projects to Plaintiff that required substantially similar experience, skill, effort, and responsibility.

41. In 2014, Mr. Birch and Plaintiff performed under similar working conditions. Primarily, Mr. Birch and Plaintiff spent the majority of working hours at the client's site, with additional hours spent at Defendant's Arlington, Virginia office.

42. In 2014, Mr. Birch and Plaintiff both led large-scale training projects for Defendant's important clients.

43. In 2014, Plaintiff's account at Defendant was with the Military Health System.

44. In 2014, Mr. Birch's account at Defendant was with the United States Postal Service.

45. In 2014, as well as in other years, Mr. Birch and Plaintiff were compared to one another during the annual performance review process.

46. In 2014, as well as in other years, Plaintiff was compared to other males during the annual performance review process.

47. Upon information and belief, Mr. Birch did not receive a "1" performance rating in 2014.

48. Upon information and belief, Mr. Birch and other male employees at Defendant were paid more, in 2014, than Plaintiff for performing substantially similar work.

**Plaintiff Complains about Pay Disparity**

49. In March 2019, Plaintiff requested that Donald Brady, her counselor at Defendant, inquire into the overall fairness and clear discrepancy with Plaintiff's salary, in comparison with her similarly qualified male counterparts.

50. During that time, Plaintiff inquired into the existence of the formal complaint process to address concerns about pay disparity between Plaintiff and male employees. In response, Mr. Brady indicated he would investigate the matter; however, Plaintiff was never provided with a response regarding same.

51. Additionally, in early March 2019, Plaintiff made multiple requests to Defendant's Talent Business Advisors and Talent Relations for internal information relating to the 2014 complaint she had made regarding her salary.

52. In early March 2019 Plaintiff also raised concerns about not receiving the promised additional salary adjustment in 2015 nor at any time since.

53. At no point has Defendant explained why Plaintiff did not receive the promised additional salary adjustment.

54. Defendant did not provide any explanation about the pay disparity between Plaintiff and her similarly situated male colleagues.

55. Plaintiff continued in April 2019 to make complaints about the disparity in pay between her and similarly situated male colleagues.

56. On or about April 2, 2019, Plaintiff contacted Andrea Borde-Dalwadi and Rebecca Wiltgen, Talent Business Advisors at Defendant, and asked for all information relating to the 2014 salary adjustment decision.

57. On or about April 2, 2019, Plaintiff also requested her personnel file.

58. Plaintiff informed Ms. Borde-Dalwadi and Ms. Wiltgen of her belief that gender discrimination occurred in 2014.

59. Plaintiff also discussed the Defendant's failure to provide Plaintiff with the promised additional salary adjustment in subsequent years that resulted in an inexplicable pay disparity between Plaintiff and similarly situated male employees.

60. Plaintiff requested information on Defendant's policy for pay disparities based on sex.

61. Defendant did not address Plaintiff's questions.

62. Defendant did not provide to Plaintiff the requested documentation.

63. Defendant did not provide Plaintiff's personnel file.

**Defendant Retaliated Against Plaintiff for Engaging in Protected Activity**

64. In April 2019, Defendant was awarded an engagement opportunity with Kite Pharma, a company that had received approval from the Federal Drug Administration (the "FDA") to market a new, unique cancer treatment to patients.

65. Plaintiff had been instrumental in securing Defendant's engagement opportunity with Kite Pharma.

66. Plaintiff was scheduled to lead the work on the project.

67. On or about April 26, 2019, after Plaintiff made complaints about pay disparity, Mr. Brady informed Plaintiff that she was being removed from her position on the Kite Pharma project.

68. Mr. Brady informed Plaintiff that she was being removed from the Kite Pharma project because she had spoken to Mr. Alex Sabad, a former employee at Defendant, about Plaintiff's complaints related to pay disparity.

69. Plaintiff was instructed not to communicate with Mr. Sabad again about her complaints concerning pay disparities.

70. In May 2019, Plaintiff was told that she no longer had a dedicated desk at the Defendant's Arlington, Virginia office.

71. In June 2019, Defendant was informed, through Plaintiff's legal counsel, about Plaintiff's complaints relating to pay disparity.

72. On or about August 6, 2019, Plaintiff informed Mr. Brady during a telephone conversation that she was going to file a lawsuit against Defendant for gender discrimination, as evidenced by long-term pay disparity.

73. On or about August 27, 2019, Plaintiff was unable to access her work email or Defendant's internal intranet.

74. On August 29, 2019, Plaintiff was informed by a helpdesk at Defendant that her account had been "deactivated."

75. The helpdesk informed Plaintiff that Defendant conduct an investigation into the deactivation of her account and provide her with an update to same.

76. To date, Plaintiff does not have an explanation as to why her account was deactivated.

**Plaintiff is Terminated from Defendant**

77. On September 4, 2019, Defendant, via email to Plaintiff's personal AOL email address (which was part of her personnel profile as a secondary email address), informed Plaintiff that she was terminated from Deloitte.

78. The email indicated that Plaintiff was terminated for violating Defendant's policies on confidentiality and electronic communications (APR 208, APR 223, APR 310) and/or for failing to respond to Defendant's inquiries and request for an explanation on the alleged violation(s).

79. The September 4th email stated that Defendant had left Plaintiff "multiple voicemail messages" on Plaintiff's work phone.

80. There were no voicemail messages from Defendant left on Plaintiff's work phone between August 14, 2019 and September 4, 2019.

81. The September 4th email stated that Defendant had sent Plaintiff "multiple email messages" to Plaintiff's work email address.

82. Between August 17, 2019 and August 23, 2019, Plaintiff was on vacation without access to email.

83. Between August 27, 2019 and September 4, 2019, Plaintiff could not access her work email account because it had been deactivated.

84. Defendant did not attempt to contact Plaintiff at Plaintiff's secondary email address until September 4, 2019.

85. Defendant did not attempt to contact Plaintiff by mail at Plaintiff's home address prior to September 4, 2019.

86. Plaintiff was not provided any information regarding the actions that Defendant considered to be in violation of policy until September 23, 2019.

87. On or about September 23, 2019, Plaintiff received an email from Ms. Jessica Oms McDermott, who is part of Defendant's Employee Lifecycle Events Compliance group. In part, the email stated that "You may not be aware, but standard monitoring at the firm identified that, prior to your departure from the firm, you moved data out of the Deloitte environment that may contain confidential and/or proprietary information. This may be violation of your obligations to Deloitte."

88. In the September 23rd email to Plaintiff, Ms. McDermott requested a conference call with Plaintiff to discuss the specifics of the possible violation of Defendant's policies.

89. On or about October 4, 2019, Plaintiff and Ms. McDermott communicated via a brief conference call.

90. On or about October 4, 2019, Ms. McDermott sent Plaintiff a list of seventy-six (76) emails which Plaintiff had sent from Plaintiff's work email to Plaintiff's personal email address(es).

91. On or about October 4, 2019, Ms. McDermott requested that Plaintiff review the list and indicate whether or not any items contained Defendant or client information.

92. On or about October 4, 2019, Plaintiff requested that Ms. McDermott provide Plaintiff with specific documentation outlining Defendant's standard corrective actions and treatment of employees found in violation of policy.

93. On or about October 9, 2019, Plaintiff emailed Ms. McDermott indicating which items on the list contained Defendant or client information.

94. Of the seventy-six (76) items, nearly half were related solely to Plaintiff's divorce.

95. Of the seventy-six (76) items, two (2) emails contained Defendant information which Plaintiff had previously emailed to Plaintiff's own personal encrypted ProtonMail email account.

96. Per Ms. McDermott's instructions, Plaintiff deleted the two (2) identified emails containing Defendant information.

97. Defendant has not informed Plaintiff whether or not Plaintiff's alleged actions constituted a violation of Defendant's policies.

98. Defendant has not provided Plaintiff with the information requested regarding Defendant's standard corrective actions and treatment of employees that are found in violation of policy.

99. Upon information and belief, employees who violate Defendant's policies are not uniformly terminated.

100. Defendant's stated reasons for Plaintiff's termination on September 4, 2019, are pretext, as the determination of whether or not Plaintiff actually violated policy had not yet been made.

101. Plaintiff was terminated for making reasonable complaints about pay disparity between Plaintiff and her similarly situated male colleagues.

## COUNT I
### Sex-Based Pay Discrimination
### [Violation of Equal Pay Act, 29 U.S.C. § 206(d)(1)]

102. Plaintiff incorporates, by reference, every allegation asserted in this Complaint as if fully set forth herein.

103. Defendant employed Plaintiff and similarly situated male employees at Defendant's Arlington, Virginia office.

104. The work performed by Plaintiff and similarly situated male employees required substantially equal skill, effort, and responsibility.

105. Plaintiff and similarly situated male employees performed their jobs under similar working conditions.

106. Plaintiff was paid a lower wage than the male employees performing substantially similar work.

107. The discrepancy in pay, between male employees and Plaintiff, was not due to seniority, or a system that measures earnings by quantity or quality of production.

108. The differential in pay between male employees and Plaintiff was not based on any other factor other than sex.

109. By the acts and omissions alleged herein, Defendant, in violation of 29 U.S.C. § 206(d)(1), deprived Plaintiff of pay that was equal to that of her male counterparts.

110. Defendant caused, attempted to cause, contributed to, or caused the continuation of the wage rate discrimination based on sex.

111. Defendant's acts and omissions in causing the differential in pay between male employees and Plaintiff were willful and purposeful.

112. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff has suffered a loss of wages and salary, compensation, employment benefits, and career path opportunities in an amount to be proved at trial.

113. Because of the continuous nature of Defendant's unlawful discriminatory conduct, which persisted with each paycheck that Plaintiff received between December 2014 and September 2019, Plaintiff is entitled to damages pursuant to the continuing violation doctrine.

114. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff is entitled to liquidated damages.

115. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT II
### Retaliation
**[Violation of Equal Pay Act, 29 U.S.C. § 206(d)(1)]**

116. Plaintiff incorporates, by reference, every allegation asserted in this Complaint as if fully set forth herein.

117. Plaintiff made reasonable complaints about disparities between her salary and those of similarly situated male colleagues who performed jobs that required substantially equal skill, effort, and responsibility; the jobs were also performed under similar working conditions.

118. Defendant did not address Plaintiff's complaints.

119. Plaintiff engaged in protected activity when she made complaints about pay disparity.

120. Plaintiff was, after making reasonable complaints about pay disparity, subjected to adverse employment actions.

121. After making complaints about pay disparity, Plaintiff was removed from her leadership position on a key project.

122. After making complaints about pay disparity, Plaintiff's desk space at Defendant's Arlington office was taken away.

123. After making complaints about pay disparity, Plaintiff's access to email and internal intranet systems for Defendant was taken away.

124. After making complaints about pay disparity, Plaintiff was eventually terminated, with Defendant citing pretextual reasons for termination.

125. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff has suffered a loss of wages and salary, compensation, employment benefits, and career path opportunities in an amount to be proved at trial.

126. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer, physical, mental, and psychological damages including extreme anxiety, mental anguish, and emotional distress in an amount to be proved at trial.

127. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff is entitled to punitive damages in an amount to be proved at trial.

128. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## JURY DEMAND

Plaintiff demands a trial by jury for those issues which are triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. Entry of judgment in favor of Plaintiff and against Defendant on all Counts of the Complaint;

b. Award of law wages and benefits denied or lost to Plaintiff as a result of Defendant's unlawful actions, in an amount to be proven at trial;

c. Award of liquidated damages for Plaintiff against Defendant;

d. Award of punitive damages for Plaintiff against Defendant;

e. Reinstatement to Plaintiff's former employment position;

f. Award of reasonable attorneys' fees and costs for Plaintiff against Defendant;

g. Award of prejudgment interests and costs for Plaintiff as appropriate;

h.        Any other relief that this Court deems equitable, appropriate, and just.

Respectfully submitted,

The Spiggle Law Firm, PC

/s/   Phillis h. Rambsy
Phillis h. Rambsy (VA Bar #92023)
4830 A 31st Street, South
Arlington, Virginia 22206
202-499-8527 (telephone)
202-540-8018 (facsimile)
prambsy@spigglelaw.com
*Counsel for Plaintiff*